[No. 58296-8-I. Division One. July 16, 2007.]

THE CITY OF WOODINVILLE, *Respondent*, v. NORTHSHORE UNITED CHURCH OF CHRIST ET AL., *Appellants*.

---

[10] We note that we soundly rejected this exact argument in *Bercier v. Kiga*, 127 Wn. App. 809, 825, 103 P.3d 232 (2004).

644

*Anthony L. Rafel*, *Lisa A. Hayes*, and *Robert A. Hyde* (of *Rafel Manville, PLLC*), for appellant Northshore United Church of Christ.

*Sean A. Russel* (of *Todd & Wakefield, PS*), for appellant Seattle Housing and Resource Effort/Women's Housing Equality and Enhancement Project.

*Michael P. Scruggs* (of *Scruggs Law Offices*) and *Greg A. Rubstello* and *Joseph Z. Lell* (of *Ogden Murphy Wallace, PLLC*), for respondent.

¶1 Cox, J. — Northshore United Church of Christ (Church) and Seattle Housing and Resource Effort/Women's Housing Equality and Enhancement Project (Share/ Wheel) appeal the permanent injunction that prohibits the temporary use without a permit of Church property for a homelessness encampment.

¶2 The city of Woodinville (City) cross-appeals. It argues that the trial court erred in applying a strict scrutiny standard to its actions based on the City's moratorium ordinance and land use regulations. The City also challenges the trial court's denial of its motion for attorney fees.

¶3 We hold that the trial court did not abuse its discretion by consolidating the hearing on the City's application

for injunction with the trial on the merits of the issues that were properly before the court. The court correctly determined that the Church and Share/Wheel breached the terms of the Temporary Property Use Agreement of August 2004. Although the trial court incorrectly applied strict scrutiny to the City's actions, it properly concluded that the Church's right to free exercise of religion was not violated. We affirm.

¶4 This is a case in which persons of good faith and compassion on all sides have struggled to deal with a chronic problem of our society—homelessness. Our resolution of the issues that we address today does not diminish the fact that homelessness and society's response to it will continue to be matters of substantial public importance.[1] It is also clear that the answers to these issues are not simple.

¶5 "Tent City 4" is an encampment of homeless people that moves to a new location on the east side every 90 days. In 2004, Share/Wheel and the Church agreed to host Tent City 4. They negotiated with the City to secure City property (Lumpkin property) for Tent City 4, subject to certain terms and conditions. The parties executed the Temporary Property Use Agreement in August 2004 to memorialize their agreement. The Church then hosted Tent City 4 in accordance with that agreement.

¶6 In March 2006, the City passed Ordinance 419 to temporarily prevent development on property in the R-1 zone, pending further study on sustainable development. The ordinance states that the City will not accept or process any land use permit applications for six months, except for improvements to residential structures and for public structures or facilities. The moratorium has since been extended for six additional months. The Church is among the properties located in the R-1 zone.

---

[1] Various municipalities in King County have attempted to address the issue of homelessness by working with organizations involved in hosting Tent City. *See* Tent City – Temporary Homeless Shelters in King County, http://www.mrsc.org/Subjects/Housing/TentCity/TentCity.aspx (last visited June 20, 2007).

¶7 In April 2006, Tent City 4 again asked the Church to host the encampment, beginning as early as May. Realizing that time was a critical issue, the Church and Share/Wheel immediately prepared and submitted to the City on April 25 temporary use permit applications for both the Church's property and the Lumpkin property. The City declined to accept the application for the Church property, stating it was unable to do so because of the moratorium imposed by Ordinance 419, which applied to the R-1 zone. But the City accepted the application for the Lumpkin property because that property is not located within the R-1 zone. After a public hearing, however, the city council declined to approve the Church's request to use the Lumpkin property.

¶8 Apparently concerned that the Church would host Tent City 4 without a permit, the City commenced this action, seeking a temporary restraining order (TRO) prohibiting use of Church property as a temporary encampment for the homeless. A superior court judge hearing the motion for a TRO did not expressly rule on the motion. Instead, the judge sua sponte issued a TRO allowing the Church to host Tent City 4 on its property pending a full hearing. The TRO was subject to conditions regarding public health and welfare that the parties negotiated after the judge's oral ruling.

¶9 Thereafter, the City moved to consolidate the hearing on preliminary injunctive relief with the trial on the merits of its claims. The consolidated hearing took place before a different superior court judge than the one who issued the TRO. The trial judge, sitting without a jury, heard evidence on the City's claims, including an amended complaint for breach of the August 2004 Temporary Property Use Agreement. Following the presentation of evidence and argument by all parties, the court ruled that the Church and Share/Wheel breached the terms of the 2004 agreement. But the court reserved the issue of damages for later resolution.[2]

---

[2] This court stayed all trial court proceedings until further order of this court in response to the joint motion by the Church and Share/Wheel. That stay shall be

The court ordered permanent injunctive relief against the Church and Share/Wheel, prohibiting the use of Church property without the necessary permit. The court denied the City's motion for attorney fees.

¶10 The Church and Share/Wheel appeal, and the City cross-appeals.

## PRELIMINARY INJUNCTION HEARING

¶11 The Church and Share/Wheel argue that the trial court abused its discretion by consolidating the hearing for injunctive relief with a trial on the merits of the City's claims. Moreover, they claim the court denied them their right to a jury trial. We disagree.

■■ ¶12 A trial court may consolidate a preliminary injunction hearing with a trial on the merits if the court "save[s] to the parties any rights they may have to [a] trial by jury."[3] A party has a right to a jury trial for claims that sound in law, not equity, as those claims were defined when the state constitution was enacted in 1889.[4]

■■ ¶13 If an action presents both legal and equitable claims, the trial judge has "wide discretion" in deciding whether to empanel a jury.[5] The court should look to various factors in making this decision, including whether the main issues are primarily legal or equitable and whether the issues are easily separable.[6] Applying these factors, it is proper to deny a jury trial if a plaintiff brings both types of claims "but the primary relief sought is

lifted without further order of this court 31 days after the filing of this opinion, provided no motions or petitions for review respecting this opinion are timely filed. *See* RAP 12.4(b), 13.4(a).

[3] CR 65(a)(2).

[4] *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 364, 617 P.2d 704 (1980).

[5] *Tae Yon Kim v. Dean*, 133 Wn. App. 338, 342, 135 P.3d 978 (2006) (quoting *State ex rel. Dep't of Ecology v. Anderson*, 94 Wn.2d 727, 729-30, 620 P.2d 76 (1980)).

[6] *Brown*, 94 Wn.2d at 368 (quoting *Scavenius v. Manchester Port Dist.*, 2 Wn. App. 126, 129-30, 467 P.2d 372 (1970)).

equitable in nature."[7] Injunctive relief is equitable in nature.[8] It is available only when there is no adequate remedy at law, and it requires the court to balance the parties' competing interests.[9] We review the trial court's decision for an abuse of discretion.[10]

¶14 Here, the City's amended complaint alleged both legal and equitable claims. Its breach of contract claim was essentially legal. But the injunctive relief it sought for both breach of contract and violation of its zoning laws was equitable. The trial court reserved for later determination the question of money damages once it ruled that the Church and Share/Wheel breached the agreement with the City. Where, as here, a case presents a mixture of legal and equitable issues but the primary relief sought is equitable, the trial court may properly deny a jury trial.[11] The trial court did not abuse its discretion.

¶15 The Church also argues that consolidation allowed the City to obtain full relief in a summary proceeding, which is contrary to a preliminary injunction's purpose in maintaining the status quo until there can be a full hearing on the merits. This argument ignores the fact that Civil Rule 65 expressly permits a trial court to consolidate a preliminary injunction hearing with a trial on the merits, provided the right to a jury trial is preserved. The trial court here did not afford full relief after a summary hearing on a preliminary injunction. Rather, it consolidated the preliminary hearing with a trial on the merits and allowed the parties to fully try their claims. At the conclusion of the extended hearing, the court granted permanent injunctive relief but reserved the issue of damages for later trial. This

---

[7] *Anderson*, 94 Wn.2d at 730.

[8] *Id.* ("Where a governmental body seeks to enjoin the commission of acts made illegal by statute, it is the court's equity jurisdiction that is invoked.").

[9] *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000).

[10] *Id.*

[11] *Tae Yon Kim*, 133 Wn. App. at 342 (quoting *Anderson*, 94 Wn.2d at 729-30).

procedure did not violate the principle on which the Church relies for this argument.

¶16 Likewise, the trial court did not deprive the Church and Share/Wheel an opportunity to prepare their case or otherwise deny them their right to procedural due process. As stated above, the civil rules allow the court to consolidate an injunction hearing with a trial on the merits as long as doing so does not abrogate a party's right to a jury trial. When a party seeks injunctive relief, the proceedings often must be speedy if relief is to be meaningful to the party seeking it.[12] Our review of the record shows no prejudice to the rights of the Church and Share/Wheel by the procedure followed in this case.

¶17 Moreover, there is no evidence in the record that the trial court deprived the Church and Share/Wheel of the opportunity to seek discovery. First, they did not seek discovery, although they were admittedly on an expedited schedule during these proceedings. Second, there is nothing to show they were unable to present evidence for the matters at issue in the consolidated hearing.

¶18 The Church further argues that it was not properly served with the amended complaint and thus did not have notice of the breach of contract claim until it was too late to prepare a proper defense. But the Church did not assign error to the trial court's denial of its oral motion to dismiss based on the defense of insufficient service of process. In any event, as we have already suggested, our review of the record reveals no prejudice to the Church by virtue of the amendment of the pleadings to include the breach of contract claim in this case.

## BREACH OF AGREEMENT

¶19 The Church and Share/Wheel argue that the Temporary Property Use Agreement does not apply to their use of Church property in 2006 for Tent City 4. Alternatively,

---

[12] *See Anderson*, 94 Wn.2d at 732.

they argue that they were excused from performing their obligations under that agreement by virtue of the City's actions. We hold that the agreement governs the use of Church property in 2006 as it did in 2004. The Church and Share/Wheel were not excused from performing their obligations under that agreement, and they breached its terms.

¶20 The goal of contract interpretation is to determine the parties' mutual intent.[13] In doing so, a court should consider a party's objective manifestations of intent expressed in the contract itself, not the party's unexpressed subjective intentions.[14] Washington courts may consult extrinsic evidence of the circumstances under which the contract was made to aid interpretation, but not to show a party's unilateral intent, to show intent independent of the contract, or to contradict or modify the contract as it was written.[15] A court must examine the contract as a whole and not adopt an interpretation that renders a term absurd or meaningless.[16] The interpretation of an unambiguous contract is an issue of law that we review de novo.[17]

¶21 Here, the trial court made several "findings of fact" about the legal effect of the Temporary Property Use Agreement that are really conclusions of law because they interpret the plain meaning of the contract. We review those conclusions de novo.[18]

¶22 "Finding" 2.12 essentially concludes that the terms of the Temporary Property Use Agreement are unambiguous and that extrinsic evidence is unnecessary to determine the meaning of the parties to that agreement.

[13] *Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990).

[14] *BNC Mortgage, Inc. v. Tax Pros, Inc.*, 111 Wn. App. 238, 249-50, 46 P.3d 812 (2002).

[15] *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 695, 974 P.2d 836 (1999).

[16] *Spectrum Glass Co. v. Pub. Util. Dist. No. 1 of Snohomish County*, 129 Wn. App. 303, 312, 119 P.3d 854 (2005).

[17] *Absher Constr. Co. v. Kent Sch. Dist. No. 415*, 77 Wn. App. 137, 141, 890 P.2d 1071 (1995).

[18] *See id.* at 142.

"Finding" 2.13 concludes that the Church and Share/Wheel agreed not to locate a homeless encampment without a City permit and to timely request a permit to allow processing by the City.

¶23 The following provisions of the 2004 agreement are most relevant to the question of breach:

A. SHARE/WHEEL shall not establish or support in any way any other unpermitted homeless encampments anywhere in the City of Woodinville *during this period or a permitted extension thereof.*

B. SHARE/WHEEL and one or more Woodinville-based church sponsor(s) may jointly submit an application to locate *a future Tent City* at some other church-owned location, but

 (1) must allow sufficient time in the application process for public notice, public comment and due process of the permit application; and

 (2) must agree not to establish, sponsor or support any homeless encampment within the City of Woodinville without a valid temporary use permit issued by the city.[19]

¶24 A plain reading of section A makes clear that its provisions apply to the relationship among the parties during the earlier, 2004 period. In contrast, section B makes clear that its terms apply to subsequent periods. The only reasonable interpretation of these provisions is that section B applies to the present situation, triggered by the events in 2006.

¶25 Neither the Church nor Share/Wheel challenges any of the trial court's true findings of fact. They are therefore verities on appeal.[20]

¶26 According to the unchallenged factual findings of the trial court, the Church and Share/Wheel failed to submit a timely application for use of Church property to allow processing. Specifically, the court found:

there was not sufficient time for the City to process an application for a temporary use permit that would allow Tent City 4

---

[19] Clerk's Papers at 160 (emphasis added).

[20] *See In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

to locate on NUCC [(Northshore United Church of Christ)] property by May 13, 2006. Temporary Use Permit processing requires a minimum of 30 to 40 days . . . .[21]

Notwithstanding the failure to obtain a permit, the Church and Share/Wheel hosted Tent City 4 on Church property. The failure to obtain the necessary permit was a direct breach of the agreement. The trial court correctly concluded that the Church and Share/Wheel breached their agreement with the City.

¶27 The Church and Share/Wheel argue that their obligations of performance under the agreement should be excused for various reasons. We reject their arguments.

¶28 They first contend that the City's breach excuses their performance. Contrary to this argument, there was no breach by the City. The contract imposes no duty on the City to accept any application for temporary or other uses. Moreover, it imposes no obligation to refrain from enacting the moratorium at issue here or similar laws in the exercise of its police power.

¶29 Second, there is no evidence that the City violated its duty to act in good faith and to deal fairly with the Church and Share/Wheel.

¶30 Third, as we discuss later in this opinion, Tent City 4 is not an accessory use under applicable zoning laws. Thus, the obligation of the Church and Share/Wheel to refrain from allowing the use of Church property for Tent City 4 without a permit was not excused.

¶31 The trial court properly granted injunctive relief based on the breach of the Temporary Property Use Agreement.

## CONSTITUTIONAL CLAIMS

¶32 The Church also argues that the City's denial of the permit application violates the state and federal constitutions. We hold that they have failed in their burden to establish these claims.

---

[21] Clerk's Papers at 479 (Finding of Fact 2.4).

¶33 Where a party raises both state and federal constitutional challenges, we first analyze the state constitution.[22] The Washington State Constitution protects "freedom of conscience in all matters of religious sentiment, belief and worship."[23] In some contexts, this provision provides greater religious protection than the analogous provision in the federal constitution.[24] However, parties must engage in an analysis under *State v. Gunwall*[25] unless the difference between the state and federal constitutions has been clearly established in a particular context.[26] Here, the difference between the two provisions has not been clearly established.[27] Yet the Church does not provide a *Gunwall* analysis. Thus, we do not reach the Church's state constitutional claims.

¶34 The First Amendment to the United States Constitution, as applied to the states via the Fourteenth Amendment, prohibits a state from "prohibiting the free exercise" of religion. In *Employment Division, Department of Human Resources v. Smith*, the United States Supreme Court held that neutral laws of general applicability are not subject to strict scrutiny even if they substantially burden religious exercise.[28] A successful challenge to such a law must allege that the law being applied is either not neutral or not generally applicable.[29] A law is not neutral if its overt

---

[22] *See Munns v. Martin*, 131 Wn.2d 192, 199 n.3, 930 P.2d 318 (1997).

[23] WASH. CONST. art. I, § 11.

[24] *See First Covenant Church v. City of Seattle*, 120 Wn.2d 203, 226, 840 P.2d 174 (1992).

[25] 106 Wn.2d 54, 720 P.2d 808 (1986).

[26] *State v. Reichenbach*, 153 Wn.2d 126, 131 n.1, 101 P.3d 80 (2004).

[27] *Open Door Baptist Church v. Clark County*, 140 Wn.2d 143, 151 n.6, 995 P.2d 33 (2000) (concluding in a case similar to this one that a *Gunwall* analysis was required because the difference between the state and federal provisions in this context had not been clearly established).

[28] 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990).

[29] *Am. Family Ass'n, Inc. v. City & County of S.F.*, 277 F.3d 1114, 1123 (9th Cir. 2002).

or covert purpose is to restrict religious practices.[30] A law is not generally applicable if it contains a "system of individualized exceptions," one involving inquiry into an applicant's particular circumstances.[31]

¶35 Here, strict scrutiny does not apply under the First Amendment. There is no evidence in the record that the City's zoning laws or the moratorium had a purpose to restrict religious practices. Although the moratorium contains categorical exceptions, it does not embody a system of individualized exceptions. Thus, it is a neutral law of general applicability and not subject to strict scrutiny analysis. To the extent the trial court applied such analysis here, it incorrectly did so.

## RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT

¶36 The Church claims that the City violated its rights under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).[32] Under the specific facts presented in this case, we disagree.

¶37 RLUIPA applies to a government's implementation of land use regulations so long as the government makes, or has in place procedures allowing it to make, "individualized assessments of the proposed uses for the property involved."[33] If applicable, RLUIPA prohibits a government from implementing a land use regulation in a way that "imposes a substantial burden" on one's "religious exercise" unless the burden satisfies strict scrutiny.[34] In passing the act, Congress intended to resurrect the application of strict scrutiny in certain types of free exercise

---

[30] *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533-34, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993).

[31] *Smith*, 494 U.S. at 884.

[32] 42 U.S.C. §§ 2000cc to 2000cc-5.

[33] *Id.* § 2000cc(a)(2)(C).

[34] *Id.* § 2000cc(a)(1).

cases.[35] It also intended to relax the requirement under First Amendment jurisprudence that the "religious exercise" be central to the individual's religion.[36] Under RLUIPA, free exercise includes "any exercise of religion, whether or not compelled by, or central to," the religion.[37]

 ¶38 The City does not dispute that providing shelter to the homeless is one of the Church's religious activities. Thus, the question is whether the City's actions in this case, requiring the Church to obtain a permit before hosting Tent City 4 and refusing to accept the application based on the moratorium, substantially burdened this activity. Because this is necessarily a heavily fact-based inquiry, our conclusion here does not necessarily apply to every set of circumstances involving religious activity in sheltering the homeless.

¶39 The federal circuits that have considered the issue have utilized different tests to determine whether a religious activity has been substantially burdened. For example, according to the Ninth Circuit, a "substantial burden" is one that is " 'oppressive' to a 'significantly great' extent. . . . [It] must impose a significantly great restriction or onus upon such exercise."[38] In the Seventh Circuit, a substantial burden exists if the governmental action " 'necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable.' "[39] And in the Eleventh Circuit, a substantial burden "is akin to significant pressure which directly co-

---

[35] See Cutter v. Wilkinson, 544 U.S. 709, 714-15, 125 S. Ct. 2113, 161 L. Ed. 2d 1020 (2005) (tracing the history of the act).

[36] Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 662-63 (10th Cir. 2006).

[37] 42 U.S.C. § 2000cc-5(7)(A).

[38] San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004) (quoting MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1170 (10th ed. 2002)).

[39] Vision Church, United Methodist v. Vill. of Long Grove, 468 F.3d 975, 997 (7th Cir. 2006) (quoting Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003)).

erces the religious adherent to conform his or her behavior accordingly."[40]

¶40 We need not decide which test is most appropriate to apply in this case. The Church has failed to show that it meets even the more lenient Ninth Circuit test. Regardless of the test, it is clear that something more than a mere inconvenience to the practice of religion must be at issue.[41]

¶41 For example, in *Guru Nanak Sikh Society v. County of Sutter*, the Ninth Circuit held that the county substantially burdened the Sikh Society by denying its second application for a conditional use permit.[42] The society wanted to build a temple for worship, but in part based on neighbors' concerns of noise and traffic, the county denied the society's applications for two different sites. According to the local law, a conditional use permit was required for any location on which the society chose to build a temple. The court held that the county greatly oppressed the society's religious exercise because the second denial "to a significantly great extent lessened the possibility that future [conditional use permit] applications would be successful."[43] The court specifically noted that the county's reasons could apply to future applications and that the society "readily agreed" to conditions and mitigation measures the county suggested.

¶42 In contrast, in *San Jose Christian College v. City of Morgan Hill*, the Ninth Circuit held that the city did not

---

[40] *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004); *see also Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004), *cert. denied*, 545 U.S. 1104 (2005) (A substantial burden "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs.").

[41] *See Guru Nanak Sikh Soc'y v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) ("These cases demonstrate 'that a "substantial burden" must place more than an inconvenience on religious exercise.'" (quoting *Midrash*, 366 F.3d at 1227)); *cf. Open Door*, 140 Wn.2d at 169 (requiring a "very specific showing of hardship" to exempt the church from a land use regulation for religious purposes under the state constitution).

[42] 456 F.3d 978, 988 (9th Cir. 2006).

[43] *Id.* at 989.

substantially burden a college's exercise of its religion when it denied the college's incomplete zoning application.[44] The court reasoned that there was no evidence that the city would deny the application if the college properly submitted a complete one. There was also no evidence that the college could not use an alternative site to fulfill its religious exercise.[45]

¶43 Here, the Church demonstrated that the City's actions effectively prevented the Church from hosting Tent City 4 on either the Church property or the alternative Lumpkin property, the 2004 cite for Tent City. While the trial court made no finding, evidence in the record arguably supports the view that the Woodinville City Council rejected use of the Lumpkin property in 2006 based, at least in part, on citizens' adverse reactions to Tent City. And it is undisputed that the City would not process the Church's application for a temporary use permit for its own property on the ground that the moratorium was in effect for the R-1 zone. These actions by the City, although they are grounded in its zoning laws, may arguably be viewed as burdens to the Church's free exercise of religion.

¶44 The relevant standard under RLUIPA, however, is that there must be a *substantial burden* to the free exercise of religion before one reaches the two additional inquiries: whether the government had a compelling interest and whether the means were the least restrictive to further that interest. Here, the Church has failed to show that the City's actions imposed a substantial burden to the free exercise of religion by its members.

¶45 For example, the Church failed to show that being unable to host Tent City 4 outdoors prevented it from effectively ministering to the homeless on its property in other ways. The evidence in the record does not establish that the use of the indoor church buildings was an ineffective option for providing shelter to the homeless. Although

[44] 360 F.3d 1024 (9th Cir. 2004).

[45] *Id.* at 1035.

the executive director of the Seattle Church Council testified that Tent City 4 is ideal because it allows residents to have a 24-hour shelter, which would not be practical inside a church building, this does not mean that using the church buildings would not have been effective. Indeed, the director testified that housing homeless persons in the Church overnight was a possibility, assuming the Church staff would be willing to clear out the building each morning to prepare it for the day's activities. It is questionable whether an overnight-only shelter would be an allowed accessory use under the Woodinville Municipal Code, but based on this record, the Church has not shown that using its buildings to shelter the homeless was not a viable alternative.

¶46 It is also not clear from the record whether there were other potential sites outside of the R-1 zone that were not City owned that might have been used to host Tent City 4. We recognize that the Church and Share/Wheel were operating under time constraints. But, nevertheless, the record is silent regarding whether the Church may have been able to obtain permission to use private land outside of the R-1 zone, such as a local business' property.

¶47 Because the Church had alternative ways to minister to the homeless on its property, and there is no showing that other property was unavailable for this purpose, there is a failure to show the existence of a substantial burden on its free exercise of religion.

¶48 And because there was no substantial burden on the Church's free exercise of religion, the trial court erred in applying strict scrutiny to the City's actions. Having determined that there was no substantial burden on the free exercise of religion, we need not address whether the City's actions were the least restrictive means to further a compelling governmental interest.

¶49 At oral argument, the City for the first time argued that the Church and Share/Wheel waived their constitutional and RLUIPA rights by signing the August

2004 Temporary Property Use Agreement. Neither party briefed the issue, and we decline to address it in this opinion.

## WOODINVILLE MUNICIPAL CODE

*Accessory Use*

¶50 The Church and Share/Wheel argue that they did not need a permit for Tent City 4 because the encampment is a permissible accessory use of church property. We disagree.

¶51 The interpretation of a municipal code is an issue of law that we review de novo.[46] Temporary use permits are required under the Woodinville code when a desired use of property is not generally permitted in the zone.[47] Failure to comply with these requirements is a violation of the code and gives the City the option to sue for injunctive relief.[48]

¶52 Accessory residential uses are allowed in the R-1 zone.[49] Under the code, an "accessory use" of residential property is one that is "subordinate and incidental to a residence," including "[a]ccessory living quarters and dwellings."[50] A "church" is defined as "including accessory uses *in the primary or accessory buildings* such as religious education, reading rooms, assembly rooms, and residences for nuns and clergy, but excluding facilities for training of religious orders."[51]

¶53 Hosting a 90-day encampment not within the primary or accessory buildings of the church is not within the

---

[46] *Sprint Spectrum LP/Sprint PCS v. City of Seattle*, 131 Wn. App. 339, 346, 127 P.3d 755, *review denied*, 158 Wn.2d 1015, 149 P.3d 377 (2006).

[47] WOODINVILLE MUNICIPAL CODE (WMC) 21.32.100.

[48] WMC 1.03.030; WMC 1.06.160.

[49] WMC 21.08.030(A) (table).

[50] WMC 21.06.013(1)(a).

[51] WMC 21.06.100 (emphasis added).

allowed "accessory use" of church property. It is not incidental to a residence, and it is not an accessory use inside a church building. Therefore, the Church's failure to obtain a permit for Tent City 4 was a code violation for which the City was entitled to obtain injunctive relief.

## Nuisance Per Se

¶54 The City argues that hosting Tent City 4 without a permit is a nuisance per se under Woodinville law. We hold that the trial court correctly accepted this argument.

¶55 "Engaging in any business or profession in defiance of a law regulating or prohibiting the same . . . is a nuisance per se."[52]

¶56 Although the municipal code of Woodinville does not expressly designate that hosting a homeless encampment without obtaining a required permit is a nuisance, the above case authority supports the trial court's decision in this case. The court did not err.

## ATTORNEY FEES

¶57 In its cross-appeal, the City assigns error to the trial court's denial of its request for attorney fees based on Civil Rule 65. We hold that the trial court did not abuse its discretion in denying fees.

¶58 Attorney fees may be awarded on the basis of a contract, statute, or recognized ground of equity.[53] For example, a court *may* award attorney fees when a party seeks to quash a wrongfully issued TRO.[54] The purpose of this rule is to deter plaintiffs from seeking unnecessary relief prior to a trial on the merits.[55] That purpose would

---

[52] *Kitsap County v. Kev, Inc.*, 106 Wn.2d 135, 138, 720 P.2d 818 (1986).

[53] *Mellor v. Chamberlin*, 100 Wn.2d 643, 649, 673 P.2d 610 (1983).

[54] *Cornell Pump Co. v. City of Bellingham*, 123 Wn. App. 226, 231, 98 P.3d 84 (2004).

[55] *Id.* at 233.

not be served where injunctive relief prior to trial is necessary to preserve a party's rights pending the outcome of the case.[56]

¶59 We review a trial court's denial of attorney fees under Civil Rule 65 for an abuse of discretion.[57] We may affirm on any ground supported by the record even though the trial court did not consider the argument.[58]

¶60 Here, the City commenced this action, seeking injunctive relief preventing the Church from allowing Tent City 4 to occupy Church property the following day. The trial court did not expressly rule on the City's request but sua sponte entered a TRO permitting the move, subject to conditions that the parties negotiated following the court's ruling. Thus, it was the City who sought the TRO, not either the Church or Share/Wheel. The fact that the court sua sponte issued the TRO, which benefited the interests of the Church and Share/Wheel, does not alter the fact that neither defendant requested the TRO. In short, neither of these parties sought injunctive relief prior to the consolidated hearing that followed.

¶61 After issuing the TRO, the court consolidated the hearing on the City's request for injunctive relief with the trial on the merits of the claims. Once that hearing began and the initial TRO had expired of its own terms, the Church and Share/Wheel sought extensions of the original TRO. We view the extensions as nothing more than a mechanism to preserve the status quo during the trial of the merits of the City's claims. As such, the requests for the extensions were not wrongful in any sense that would support the award of fees to the City. The trial court appears to have reached the same conclusion when it implicitly rejected the claim that the original TRO and the extensions were wrongful by denying the City's request for fees.

[56] *Id.*

[57] *Id.* at 231.

[58] *In re Marriage of Rideout*, 150 Wn.2d 337, 358, 77 P.3d 1174 (2003).

¶62 For these reasons, the City's reliance on *Ino Ino, Inc. v. City of Bellevue*[59] is misplaced. There, the Supreme Court explained that a party may recover attorney fees necessary to dissolve a wrongfully issued TRO, which is a TRO that is dissolved after a full hearing.[60] But as we have already discussed, the purpose of this equitable rule, to deter a party from seeking unnecessary injunctive relief, would not be served by applying it against the Church or Share/Wheel in this case.

¶63 For the first time in its reply brief, the City argues that RCW 7.40.020 allows a court to enter a TRO only to a moving plaintiff. We will not consider arguments raised for the first time in a reply brief.[61]

¶64 Although neither party addresses the following additional point, we note that the agreement between the parties bears on the question of fees. The Temporary Property Use Agreement between the parties expressly provides that in the event of litigation over the agreement, the parties "shall be responsible for their own legal fees and associated costs, regardless of outcome." Given this contractual provision, it is difficult to see any basis for the City to obtain fees or costs from the Church or Share/Wheel.

¶65 In short, the trial court did not abuse its discretion by denying the City's request for attorney fees under the circumstances of this case.

¶66 We affirm the order of permanent injunctive relief and the order denying the City's motion for attorney fees and costs.

APPELWICK, C.J., and BAKER, J., concur.

Review granted at 162 Wn.2d 1019 (2008).

---

[59] 132 Wn.2d 103, 937 P.2d 154, 943 P.2d 1358 (1997).

[60] *Id.* at 143.

[61] *See* RAP 10.3(c); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).