211 P.3d 406 (2009)
CITY OF WOODINVILLE, a Washington municipal corporation, Respondent,
v.
NORTHSHORE UNITED CHURCH OF CHRIST, and Seattle Housing and Resource Effort/Women's Housing Equality and Enhancement Project, Petitioners.
No. 80588-1.
Supreme Court of Washington, En Banc.
Argued May 20, 2008.
Decided July 16, 2009.
*407 Greg Alan Rubstello, Joseph Zachary Lell, Seattle, WA, Michael Paul Scruggs, Scruggs Law Offices, Mercer Island, WA, for Respondent.
Anthony L. Rafel, Robert Aloysius Hyde, Rafel Law Group PLLC, Sean Adam Russel, Ahlers & Cressman PLLC, Seattle, WA, for Petitioners.
Howard Mark Goodfriend, Edwards Sieh Smith & Goodfriend PS, Seattle, WA, Amicus Curiae on behalf of Church Council of Greater Seattle, Temple Beth Am., Northwest Washington Synod of the Evangelical Lutheran Church, Evergreen Council of American Baptist Church, Catholic Archdiocese of Seattle, Pacific Northwest Conference of the United Church of Christ and Washington Association of Churches.
Sarah A. Dunne, ACLU, Seattle, WA, Amicus Curiae on behalf of ACLU.
J.M. JOHNSON, J.
¶ 1 Tent City 4 is a movable encampment of homeless people in the Puget Sound area sponsored by nonprofit Seattle Housing and Resource Effort/Women's Housing Equality and Enhancement Project (Share/Wheel). *408 The encampment houses approximately 60-100 people and moves from place to place every 90 days. It relies on property owners to volunteer sites and in 2006 asked Northshore United Church of Christ (the Church) to host. The Church agreed to allow use of its property in the R-1 residential area around the church buildings in the city of Woodinville (City) and applied for a temporary use permit from the City. Several months before the application, the City had passed a six-month moratorium on all land use permit applications in the R-1 zone, pending completion of a study on sustainable development.[1] Relying on the moratorium, the City declined to process the Church's permit application.
¶ 2 The Church argues the City's (in)action conflicts with our cases considering article I, section 11 of Washington's constitution. That provision guarantees, "[a]bsolute freedom of conscience in all matters of religious sentiment, belief and worship, ..." but also provides the provision, "shall not be so construed as to ... justify practices inconsistent with the peace and safety of the state." Id.
¶ 3 Concerned that the encampment would go forward, the City sought, and the trial court entered, an injunction against the Church and Share/Wheel, prohibiting Tent City 4 from proceeding without the necessary permits. The Court of Appeals upheld the City's denial of the permit based on the moratorium. City of Woodinville v. Northshore United Church of Christ, 139 Wash. App. 639, 162 P.3d 427 (2007). Based on our precedent construing article I, section 11 of the Washington Constitution, we hold that the City cannot apply a moratorium to refuse to consider a permit request from the Church and therefore reverse.

FACTS AND PROCEDURAL HISTORY
¶ 4 The main facts underlying this case occurred in 2006, but several important events occurred two years earlier. In 2004, Share/Wheel and Tent City, working with the Church, also sought a location in the City as a temporary home. The City offered to allow Tent City free use of a site on city property intended for a public park. The City, Share/Wheel, and the Church executed a contract spelling out conditions for the temporary use and the parties' rights and duties. In a relevant provision, the 2004 contract provides for Share/Wheel and the Church to "submit an application to locate a future Tent City at some other church-owned location, but ... must agree not to establish... any homeless encampment within the City of Woodinville without a valid temporary use permit...." Clerk's Papers (CP) at 160. In 2004, Tent City spent three months on the city property pursuant to this contract and then moved on to other areas of King County.
¶ 5 Two years later, with the Church again as host, Tent City 4 sought to move back to the city. In the meantime, the City had adopted a moratorium on all temporary use permits in the R-1 residential zone where the Church is located. The moratorium lasted six months, and its purpose was to allow city planners to study environmental effects of new development. The City subsequently renewed the moratorium for another six months.
¶ 6 The Church planned to host Tent City 4 beginning in August 2006, but because Tent City 4's summer site host withdrew, the Church sought to accelerate its hosting to the months of May through July. Scrambling in late April, the Church applied for a temporary use permit to begin in May. The City refused to process the application, citing the moratorium on all permits in the R-1 zone. The Church alternatively asked the city council to let Tent City 4 move to the same parklands location where it had stayed in 2004 (which was outside the R-1 zone of the moratorium). After a public hearing and input from the community, the city council rejected the proposal.
¶ 7 When the Church moved forward to host Tent City 4 on its property, notwithstanding the failure to get permits, the City brought an action in King County Superior Court for a temporary restraining order. The City also requested a permanent injunction blocking the Church and Share/Wheel *409 from hosting Tent City 4 without obtaining the necessary permits.
¶ 8 Originally, the trial court denied the City's motion for a temporary restraining order and instead, sua sponte, entered an order allowing Tent City 4 to set up its encampment at the Church immediately. Tent City 4 moved onto church property. The City moved to dissolve the court's temporary order and to consolidate that hearing with a trial on the merits of the case. The case proceeded to a consolidated hearing on the merits.
¶ 9 A different judge was assigned to the case, and the trial court heard evidence over the next week and a half, after which it entered a final order. That order consolidated the motion for a temporary injunction with the motion for permanent relief. The court then ordered Tent City 4 to leave the city and enjoined the Church from hosting Tent City in the future without a permit. It held that the Church had breached the 2004 contract and that Tent City 4 was creating a public nuisance under the City's zoning laws by operating without a permit. The court held that Washington's constitution and the federal Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-2000cc-5, both required the city zoning restrictions to be narrowly tailored to achieve a compelling government purpose but that the City had met the standard. Attorney fees were denied, and the only issue the order failed to address was the amount of damages the Church owed the City for violating the 2004 contract.
¶ 10 The Church appealed. Northshore United Church, 139 Wash.App. 639, 162 P.3d 427. Division One of the Court of Appeals held that the trial court was correct that the Church had violated the 2004 contract. Even though the trial court had applied the wrong constitutional standard by applying strict scrutiny, the permanent injunction was upheld by the Court of Appeals, as was denial of attorney fees. The Church once again appealed.[2] This court granted review. City of Woodinville v. Northshore United Church of Christ, 162 Wash.2d 1019, 178 P.3d 1033 (2008). We hold the refusal to process the permit application was violative of rights under article I, section 11, and reverse.

ISSUES
¶ 11 1. Whether the City's refusal to process the Church's requested permit based on an area-wide moratorium violated article I, section 11 of the Washington Constitution.
¶ 12 2. Whether the Church breached its 2004 contract with the City and, if so, whether this breach was justified by the City's refusal to process a permit.

STANDARD OF REVIEW
¶ 13 The parties dispute the appropriate standard of review. The Church requests de novo review on all issues while the City asks us to review the trial court's factual findings only for clear error. The unique posture of the case warrants brief explanation. The trial court consolidated the motion for a temporary injunction with a trial on the merits and heard testimony on every issue. We have no cases deciding the proper standard of review for such a situation, but there is persuasive guidance from federal courts (which have comparable court rules). As stated in one of those federal cases, where the trial court "combined the hearing on the injunction with a trial on the merits[,] ... we review the district court's findings of fact for clear error ... and its conclusions of law de novo." Pinette v. Capitol Square Review & Advisory Bd., 30 F.3d 675, 677 (6th Cir.1994) (citations omitted).

ANALYSIS

A. The City's Application of a Moratorium To Deny the Permit Application Violated the Church's Exercise of Religion

¶ 14 Washington's constitution guarantees, "[a]bsolute freedom of conscience in all matters of religious sentiment, belief and worship" and also provides that this "shall not be so construed as to ... justify practices inconsistent with the peace and safety of the state." WASH. CONST. art. I, § 11.
*410 ¶ 15 The Court of Appeals did not decide whether this guaranty of our constitution is broader than the federal constitutional protection for religious freedom because the Church did not offer a complete analysis of the difference between the state and federal constitutions. Northshore United Church, 139 Wash.App. at 654, 162 P.3d 427.
¶ 16 State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986) articulates standards to determine when and how Washington's constitution provides different protection of rights than the United States Constitution. Id. at 58, 720 P.2d 808. Litigants brief the differences when we are faced with deciding whether a parallel constitutional provision affords differing protections. State v. Reichenbach, 153 Wash.2d 126, 131 n. 1, 101 P.3d 80 (2004). But where we have "already determined in a particular context the appropriate state constitutional analysis under a provision of the Washington State Constitution," it is unnecessary to provide a threshold Gunwall analysis. Id.
¶ 17 A strict rule that courts will not consider state constitutional claims without a complete Gunwall analysis could return briefing into an antiquated writ system where parties may lose their constitutional rights by failing to incant correctly. Gunwall is better understood to prescribe appropriate arguments: if the parties provide argument on state constitutional provisions and citation, a court may consider the issue. This is especially true where, as in many areas, the special protections of our state constitution have been previously recognized by this court. Listing the Gunwall factors is a helpful approach when arguing how Washington's constitution provides greater rights than its federal counterpart. But failing to subhead a brief with each factor does not foreclose constitutional argument.
¶ 18 Here, numerous cases in this court have already decided that the article I, section 11 freedom of religious sentiment, belief and worship "absolutely protects the free exercise of religion, [and] extends broader protection than the first amendment to the federal constitution...." First Covenant Church v. City of Seattle, 120 Wash.2d 203, 229-30, 840 P.2d 174 (1992). The Church has more protection under Washington's constitution.
¶ 19 Proceeding under article I, section 11, a party challenging government action must show two things: that the belief is sincere and that the government action burdens the exercise of religion. Open Door Baptist Church v. Clark County, 140 Wash.2d 143, 152, 995 P.2d 33 (2000). The government must then show it has a narrow means for achieving a compelling goal.[3]Id.
¶ 20 There is no issue raised here of whether hosting Tent City is important or central to the Church's exercise (though the Church has never before engaged in such practice around or in its church). The City conceded in its briefing in this case the Church's sincerity of belief. The City has also not argued in its briefing that the moratorium fulfills a compelling goal and only offered argument that the moratorium did not substantially burden the Church's free exercise of religion. Thus, the only issue presented is whether the City's actions substantially burden the free exercise of the Church's religious "sentiment, belief [or] worship."
¶ 21 Government burdens religious exercise "[i]f the `coercive effect of [an] enactment' operates against a party `in the practice of his religion....'" First Covenant, 120 Wash.2d at 226, 840 P.2d 174 (alteration in original). This does not mean any slight burden is invalid, however.[4] If the constitution forbade all government actions *411 that worked some burden by minimally affecting "sentiment, belief [or] worship," then any church actions argued to be part of religious exercise would be totally free from government regulation. Our constitution expressly provides to the contrary. The argued burden on religious exercise must be more, it must be substantial. Here, the total refusal to process a permit application is such a burden.
¶ 22 Unconstitutional burdens through government regulation were found in the two decisions of this court: Munns v. Martin, 131 Wash.2d 192, 930 P.2d 318 (1997) and Open Door. In Munns, St. Patrick's School was a state historic site and the Bishop of Spokane intended to change the church building use to a pastoral center. Id. at 195, 930 P.2d 318. Petitioner sought to enforce an ordinance to delay permitting for up to 14 months. This court held the potential burden of delay created an unconstitutional burden. Id. at 207, 930 P.2d 318. In Open Door, a church bought a building intending to renew its use as a place of worship, and the county ordered the church to apply for a conditional use permit. Open Door, 140 Wash.2d at 145-46, 995 P.2d 33. Clark County allowed the church to continue operating pending decision on an application, but the church brought suit rather than go through the process. We held the burden of properly applying for a permit was not an excessive burden on religion expressly noting, "we are not confronted in the case with the denial of a conditional use permit application...." Id. at 149, 995 P.2d 33. If any government burden, such as applying for permits, were unconstitutional, we would have decided Open Door differently.
¶ 23 These cases conclude that a burden can be a slight inconvenience without violating article I, section 11, but the State cannot impose substantial burden on exercise of religion. See also First United Methodist Church v. Hearing Examiner, 129 Wash.2d 238, 249, 916 P.2d 374 (1996) (landmark designation reducing value of a church by half is an excessive burden).
¶ 24 Any state burden must be evaluated in the context in which it arises. The City properly did not dispute in court the sincerity of the beliefs nor their importance to believers. Housing the homeless may be a part of religious belief or practice, but it is different from prayer or services, for example, which are at the core of protected worship. The Church has never before hosted the homeless on or in its property but has long continued to worship in a manner preferred by its congregation.
¶ 25 The context for the constitutional evaluation of any burden necessarily encompasses impact on others in the city. Housing the homeless affects those outside the church in a way that private prayer or religious services inside the church buildings do not. Indeed, a homeless encampment likely affects the neighbors who live nearby far more than it impacts most parishioners who spend only hours in church weekly while neighbors must live continuously with the encampment. Cities may mediate these externalities reflecting concerns for safety, noise, and crime but may not outright deny consideration of permitting. By way of analogy, while healing the sick is similarly connected to worship, a church must still comply with reasonable permitting processes if it wants to operate a hospital or clinic. This notion is expressly reflected in article I, section 11 providing, "the liberty of conscience hereby secured shall not be so construed as to ... justify practices inconsistent with the peace and safety of the state."
¶ 26 Applying these principles, the City's total moratorium placed a substantial burden on the Church. It prevented the Church from even applying for a permit. It gave the Church no alternatives. The moratorium lasted a full year, nearly equaling the 14 month moratorium we held improper in Munns, 131 Wash.2d at 195, 207, 930 P.2d 318. The City failed to show that the moratorium was a narrow means for achieving a compelling goal. Therefore, the City's action constituted a violation of article I, section 11 of our constitution.
¶ 27 Since we hold for the Church on state constitutional grounds, we need not, and therefore do not, decide whether there is violation of RLUIPA. Our decision rests solely on our state constitution. See First *412 Covenant Church, 120 Wash.2d at 228, 840 P.2d 174.

B. The Church's Breach of the Property Use Agreement and the City's Duty to Process Permit Application

¶ 28 The Church signed a contract with the City in 2004 promising to obtain a valid permit before hosting Tent City at the Church in the future. The Church argues that the contract was only valid for 2004, and even if it breached, it was justified by the City's breach. The relevant contract language, found at section 2.B. in the contract, reads:
[Tent City] and one or more Woodinville-based church sponsor(s) may jointly submit an application to locate a future Tent City at some other church-owned location, but
(1) must allow sufficient time in the application process for public notice, public comment and due process of the permit application; and
(2) must agree not to establish, sponsor or support any homeless encampment within the City of Woodinville without a valid temporary use permit issued by the city.
CP at 160. The Church did not obtain a valid permit before hosting Tent City 4. Under the contract's clear language, the Church breached this contract.
¶ 29 The Church argues to limit the contract effect to 2004. It points to section 3 of the contract, which reads, "[Tent City] shall promptly vacate the Property no later than 40 days after August 14, 2004" and which allows the Church to "submit an application to maintain Tent City 4 at the Property for an additional 60 days, provided that a valid city permit is issued...." Id. It also cites the first sentence of the contract: "THIS AGREEMENT FOR TEMPORARY USE OF CITY PROPERTY ('the Agreement') is hereby executed...." Id. at 159. It also argues that section 2 is time-limited because it begins with: "[Tent City's] use of the Property pursuant to this Agreement is expressly subject to the following conditions...." Id. at 160 (emphasis added). "The Property" means the park, id. at 159, so section 2 must apply only to the park.
¶ 30 These arguments fail because they require the court to entirely disregard section 2 of the contract and courts avoid such rewriting of contracts. Colo. Structures, Inc. v. Ins. Co. of the W., 161 Wash.2d 577, 588, 167 P.3d 1125 (2007).
¶ 31 The Church also argues we find the contract ambiguous and construe the contract against the City, as drafter. However, the contract expressly provides otherwise: "No ambiguity shall be construed against any party based upon a claim that the party drafted the ambiguous language." CP at 167. The contract is not ambiguous and the promise at issue is section 2: "church sponsor(s) may jointly submit an application to locate a future Tent City at some other church-owned location, but ... must agree not to establish, sponsor or support any homeless encampment within the City of Woodinville without a valid temporary use permit issued by the city." CP at 160. This is simple and clear; it is not ambiguous. The parties obviously considered a future Tent City stay, and the Church breached by not obtaining "a valid temporary use permit."
¶ 32 Though the Church breached, it alternatively argues that such breach was justified. On this theory, the City had a duty to accept and process the Church's permit application. When the City refused the permit application, citing the moratorium, the City breached that duty.
¶ 33 If a party materially breaches a contract, the other party may treat the breach as a condition excusing further performance. Colo. Structures, 161 Wash.2d at 588, 167 P.3d 1125. Under the agreement, the Church had the duty to apply for a permit and the City had a corresponding duty to accept and process. All parties to a contract have duties of good faith and fair dealing. Metro. Park Dist. v. Griffith, 106 Wash.2d 425, 437, 723 P.2d 1093 (1986). When the City rejected the Church's application without even considering it, the Church was excused from full compliance. Though the Church did not provide sufficient processing time, as also required by the 2004 *413 contract, this does not excuse the City's refusal to process the permit application, especially since the City actually had time to hold a public hearing.
¶ 34 Under the contract's clear terms, the Church promised not to host Tent City 4 until it obtained a permit, a promise it broke. Since the City would not process the Church's permit application, the Church was excused from its performance under these unique circumstances.

CONCLUSION
¶ 35 The City violated the Church's constitutional rights under article I, section 11 when it refused to process the Church's permit application based on a total moratorium on temporary use permits in the area. Rather than seeking to impose reasonable conditions on the Church's project to protect the safety and peace of the neighborhood, the City categorically prevented the Church from exercising what the City concedes is religious practice. We therefore reverse the Court of Appeals.
WE CONCUR: GERRY L. ALEXANDER, C.J., SUSAN OWENS, CHARLES W. JOHNSON, MARY E. FAIRHURST, BARBARA A. MADSEN and DEBRA L. STEPHENS, JJ.
SANDERS, J. (concurring).
¶ 36 I concur in result but write separately to focus on the majority's errant and dangerous assumption that the government may constitutionally be in the business of prior licensing or permitting religious exercise anymore than it can license journalists. No one can say it better than did Washington Supreme Court Justice Charles Z. Smith in his dissent to Open Door Baptist Church[1]:
It is my strong belief that our courts must at all time stand as a bulwark between the State and the church to assure the free exercise of religion guaranteed by our Constitution. The courts must then be vigilant against seemingly minimal encroachments by the State which would lead us towards sanctioned government intervention such as practiced in some totalitarian nations, characteristically controlling the exercise of religion through licensing schemes requiring ultimate approval by secular authorities.
¶ 37 This was one of only three dissents penned by this jurist during his long and distinguished career on the Washington Supreme Court. Moreover Justice Smith knew of what he spoke since he was appointed by President Clinton to serve on the United States Commission on International Religious Freedom.
¶ 38 Although I strongly dissented to Open Door, not even Open Door purported to allow the government to license religious exercise per se. Rather it concerned whether the government might condition use of a church's real estate on an application for a conditional use permit.
¶ 39 The majority opinion also fails to speak directly to a number of counterclaims asserted by the church that must be resolved on remand consistent with the majority opinion. Given the majority's disposition on similar state constitutional grounds, the trial court must reconsider its negative disposition of the church's causes of action under 42 U.S.C. § 1983 (the Civil Rights Act of 1871) as well as 42 U.S.C. § 2000cc (the Religious Land Use and Institutionalized Persons Act of 2000) (RLUIPA). Additionally, although not an issue for our review here, the church also claimed an entitlement to an award of reasonable attorney fees in its counterclaim. Both of the aforementioned statutes provide for such as does our common law doctrine entitling the victim of a wrongfully issued injunction to such a recovery. See Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 937 P.2d 154, 943 P.2d 1358 (1997).
¶ 40 Returning to the state constitutional analysis, I necessarily repair to the text itself. In another case arising under Washington Constitution article I, section 11, we held "[a]ppropriate constitutional analysis begins with the text and, for most purposes, should end there as well." Malyon v. Pierce County, *414 131 Wash.2d 779, 799, 935 P.2d 1272 (1997).
RELIGIOUS FREEDOM. Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the state.
Const. art. I, § 11.
¶ 41 Notwithstanding the textual mandate of "[a]bsolute freedom of conscience in all matters of religious sentiment, belief and worship," the majority states:
Government burdens religious exercise "[i]f the `coercive effect of [an] enactment' operates against a party `in the practice of his religion....'" First Covenant[ Church v. City of Seattle, 120 Wash.2d 203, 226, 840 P.2d 174 (1992)] (alteration in original). This does not mean any slight burden is invalid, however. If the constitution forbade all government actions that worked some burden by minimally affecting "sentiment, belief [or] worship," then any church actions argued to be part of religious exercise would be totally free from government regulation. Our constitution expressly provides to the contrary. The argued burden on religious exercise must be more, it must be substantial. Here, the total refusal to process a permit application is such a burden.
Majority at 410-11 (footnote omitted). Of course I agree that refusal to process a permit application is indeed a substantial burden; however, I disagree that it is the role of black-robed judges to sit in judgment on whether a burden on religious exercise is substantial or slight when the constitution speaks of "[a]bsolute freedom of conscience in all matters of religious sentiment, belief and worship." Const. art. I, § 11 (emphasis added). And although I also agree that there is an exception in the clause ("but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the state"), that exception does not in any way, shape, or form, mean that religious worship that is not licentious or inconsistent with the peace and safety of the state may be even minimally curtailed. Absolute means absolute.
¶ 42 Moreover an important distinction must here be made between a violation of the general laws precluding excepted conduct on the one hand and a law that certain activities are prohibited unless previously specifically licensed or permitted on a site specific basis. The requirement to obtain a permit or a license is not a sanction for engaging in licentiousness or breaking the peace and safety, but rather a prior restraint on any activity subject to the permitting requirement, whether or not it may ultimately involve licentiousness, peace, or safety. "[I]f a constitutional provision is plain and unambiguous on its face, then no construction or interpretation is necessary or permissible." Anderson v. Chapman, 86 Wash.2d 189, 191, 543 P.2d 229 (1975). Furthermore, the express mention of one thing in the constitution implies the exclusion of things not mentioned. Yelle v. Bishop, 55 Wash.2d 286, 295, 347 P.2d 1081 (1959). Therefore, article I, section 11 of our state constitution mandates absolute religious freedom as the rule, infringement only if it fits within the plain meaning of one of the three narrowly defined exceptions. Thus these exceptions do indeed prove the rule. But prohibiting religious exercise absent a permit or a license cannot be found amongst the exceptions to the general rule of freedom.
¶ 43 Under the First Amendment to the United States Constitution, prior restraint of religious exercise has been discouraged since at least the time the United States Supreme Court decided Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943) and Follett v. Town of McCormick, 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944). There the Court held municipalities could not require religious colporteurs to pay a license fee as a condition to the pursuit of their activities, even if the license ordinance was facially nondiscriminatory. That is because "[f]reedom of press, freedom of speech, and freedom of religion are in a preferred position." Murdock, 319 U.S. at 115, 63 S.Ct. 870. Prior restraints on the free exercise of religious beliefs offend the Constitution. Jimmy Swaggart Ministries v. Bd. of Equalization *415 of Cal., 493 U.S. 378, 389, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990). I can find no room within the plain language of article I, section 11 to prohibit religious practice absent a previously obtained permit or license.
¶ 44 I doubt that a church can be held to a contract with a municipality which includes imposition of a permitting requirement that could not be constitutionally imposed in the first place. However, if so, I agree with the majority's analysis of this unconstitutional moratorium.[2]
¶ 45 Although not directly addressed by the majority, a number of principles set forth in its opinion tend to resolve remaining questions pertaining to a number of counterclaims in the church's favor. For the same reason the moratorium violated article I, section 11, it violates the First Amendment to the United States Constitution, thereby validating the church's cause of action under 42 U.S.C. § 1983. 42 U.S.C. § 1988 mandates an award of reasonable attorney fees to the church for violation of its federally secured constitutional rights. See, e.g., Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570 (2d Cir.2002); see also Stuart Circle Parish v. Bd. of Zoning Appeals, 946 F.Supp. 1225 (E.D.Va.1996). So too does the majority opinion establish a violation of RLUIPA. 42 U.S.C. § 2000cc(a)(1) provides:
No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution
(A) is in furtherance of a compelling governmental interest; and
(B) is the least restrictive means of furthering that compelling governmental interest.
Consistent with the majority opinion it would appear RLUIPA has been violated, which would also entitle the church to an award of damages and reasonable attorney fees.
¶ 46 By dissolving the wrongfully issued injunction, the majority also entitles the church to an award of reasonable attorney fees under Ino Ino, 132 Wash.2d 103, 937 P.2d 154. I find it somewhat ironic that the city of Woodinville relied upon this case for an award of reasonable attorney fees to itself. The Court of Appeals rejected the city's claim for precisely the reason it now turns out that the church is entitled to assert it, i.e., a party may recover all reasonable attorney fees necessary to dissolve a wrongfully issued injunction. In Ino Ino nude dancing girls obtained an injunction against the city of Bellevue, enjoining its alleged unconstitutional adult entertainment ordinance. In the Supreme Court, however, they lost the case (over my dissent), whereby the court ordered that they bear the full burden on their unclad shoulders of all the city's reasonable attorney fees in its ultimately successful effort to dissolve the injunction. Now it's the city's turn.
¶ 47 For these reasons I concur in the majority's result while expressing some reservations about its rationale.
NOTES
[1] The moratorium was later extended for an additional six months.
[2] The City cross-appealed only the denial of attorney fees.
[3] Of course, the government may require compliance with reasonable police power regulation. See Wash. Const. art. I, § 11 (the right to religious belief and worship does not excuse practices inconsistent with peace and safety).
[4] When deciding if a government regulation is a substantial burden, courts should look at any alternatives the regulation leaves open. For example, at oral argument, the Church conceded it would be possible to house Tent City inside the Church. Worship traditionally takes place inside a church and this alternative would obviate many of neighbor/city legitimate concerns. We make no decision on such a regulation because the City did not allow such alternative.
[1] Open Door Baptist Church v. Clark County, 140 Wash.2d 143, 171-72, 995 P.2d 33 (2000) (Smith, J., dissenting).
[2] I agree with the church's argument that the contract at issue is limited to 2004, and thus no permitting requirement was even contractually imposed. However given the disposition by the majority, it simply doesn't matter.